FILED
2023 Oct-10 PM 03:43
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 7:22-cr-00471-LSC-JHE-1 |
| | ) | |
| | ) | |
| WYNDEL DORSIE SHEPHERD, JR., | ) | |
| | ) | |
| Defendant/Movant. | ) | |

## MEMORANDUM OF OPINION AND ORDER

This matter is before the Court on a Motion to Suppress evidence and statements filed by Defendant, Wyndel Dorsie Shepherd, Jr. ("Shepherd"). (Doc. 23.) Upon consideration, the Court finds that the motion is due to be denied, and the evidence and statements will not be suppressed.

## I.   PROCEDURAL HISTORY

Shepherd has been charged by indictment with possession of a controlled substance, methamphetamine, with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(A) (Count 1); possession of a firearm in furtherance of a drug trafficking crime or crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count 2); and felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). (Doc. 1.)

On June 13, 2023, Shepherd filed the instant motion, seeking to suppress all evidence and statements obtained during law enforcement's traffic stop of the vehicle in which he was driving on March 10, 2022, on Interstate 20/59 ("I 20/59"). (Doc. 23). The United States filed a response in opposition to the motion. (Doc. 25). The Court conducted an evidentiary hearing on the motion on July 26, 2023. After the hearing, both parties submitted supplemental briefs. (Docs. 29 & 30.)

## II.   FACTS

At the suppression hearing, the government called as witnesses Cody Key ("Agent Key"), an agent with the 17th Judicial Circuit Drug Task Force ("Task Force"), and Clint Sumlin, the Commander of the Task Force ("Commander Sumlin"). The following summarizes their testimony.

On March 10, 2022, while patrolling I 20/59, Agent Key observed a white Nissan Sentra traveling in the right lane. Agent Key observed that the driver of the Sentra appeared to be concealing himself from view behind the center roof support pillar of his vehicle. Agent Key pulled into traffic and began pacing the Nissan Sentra with his patrol vehicle for the purpose of determining its speed. Agent Key's speedometer indicated that he was driving 77 m.p.h., yet the Nissan Sentra continued to pull ahead and gain distance ahead of Agent Key, passing other vehicles in the left lane. This led Agent Key to conclude that the driver of the Nissan Sentra

was exceeding the posted speed limit, which was 70 m.p.h. Therefore, Agent Key conducted a traffic stop of the driver of the Nissan Sentra near mile marker 21 in Sumter County. The driver and only occupant was identified as Shepherd. Shepherd eventually made various incriminating statements that are not relevant to this motion, and Agent Key eventually searched the vehicle and discovered, among other things, a firearm, ammunition, a digital scale, marijuana, and methamphetamine. Agent Key testified that he had used the pacing method to determine another vehicle's approximate speed over a thousand times in his career.

At the time of this incident, Agent Key was employed by the Demopolis Police Department but was acting in his capacity as a full-time member of the Task Force. The Task Force was originally established in March 2011 by an agreement among the 17th Judicial Circuit District Attorney over Sumter, Greene, and Marengo Counties; the Demopolis, Linden, Eutaw, Livingston, and York Police Departments; and the Greene and Marengo Counties Sheriff's Offices. (*See* doc. 27-3 at 6-10). One law enforcement officer from each participating agency is designated as a member of the Task Force, either part-time or full-time, and deputized by the District Attorney, who is the governing head of the Task Force, to extend the officers' jurisdictions to the entire Circuit. In September 2012, another agreement establishing the Task Force was executed by the same agencies, along with the Thomaston Police

Department and the University of West Alabama Campus Police. (*See id.* at 1-5) (the 2011 and 2012 agreements together hereinafter referred to as the "Organizational Agreements"). The Task Force is essentially a subdivision of the District Attorney's office for the Circuit, and its purpose is to combat drug and drug-related crimes throughout the Circuit. Commander Sumlin has been the commander since the Task Force's inception. He reports to the District Attorney, and his job title is District Attorney Investigator. According to Commander Sumlin, the Task Force still operates under the terms of those original Organizational Agreements.

Agent Key has been employed with the Demopolis Police Department for 15 years and was assigned to the Task Force in June 2021. As a police officer, he received the Alabama Peace Officers' Standards and Training Commission ("APOST") certificate. (*See* doc. 27-2.) On June 3, 2021, the Demopolis Police Department entered into a Memorandum of Understanding with the Task Force under which the Demopolis Police Department would assign an officer to the Task Force for a three-year term. (*See* doc. 27-5) ("MOU"). The MOU was signed by the District Attorney, the City of Demopolis Mayor, the Demopolis Police Chief, and Commander Sumlin. Shortly thereafter on June 15, 2021, the Demopolis Police Chief designated Agent Key as that agent to the Task Force in a full-time capacity, through a signed Agent Assignment. (*See* doc. 27-6) ("Agent Assignment"). The

Agent Assignment was signed by the District Attorney, the Demopolis Police Chief, and Commander Sumlin. On the day that Agent Key was assigned to the Task Force, he had an in-person meeting with Commander Sumlin and the District Attorney, and he received a Task Force policy manual and a list of his job duties. Agent Key's supervisor is Commander Sumlin. Agent Key's primary job duty as a Task Force agent is to perform traffic detail, looking for criminal activity on I 20/59, which runs through two of the three counties in the Circuit. Prior to becoming a Task Force agent, Agent Key completed training courses on interstate interdiction and received training in this area from Commander Sumlin and other agents within the Task Force, including ride-alongs on I 20/59.

Agent Key explained that, prior to becoming a Task Force agent, he could not conduct traffic stops on I 29/59 because it was outside of the jurisdiction of Demopolis, but that he was instructed when he became a Task Force agent that he could conduct traffic stops on portions of I 20/59 that ran through the Circuit.

## III.   DISCUSSION

### A.     The arguments for suppression

Shepherd argues that Agent Key did not have legal authority or probable cause to conduct the traffic stop. With regard to the legal authority argument, Shepherd contends that Agent Key, as a Demopolis police officer, did not have the authority

to enforce Alabama traffic laws on I 29/59 because the interstate does not run through Demopolis and the population of Demopolis, which is 7,162 according to the U.S. Census, falls below the statutory minimum for Alabama interstate highway enforcement. *See* United States Census Bureau, Demopolis city, Alabama, QuickFacts, https://www.census.gov/quickfacts/demopoliscityalabama; Ala. Code § 32-5A-171(8) (a law enforcement officer or a peace officer of any incorporated municipality or town which has less than 19,000 inhabitants according to the most recent federal decennial census shall not enforce this section on any interstate highway).

Shepherd acknowledges that at the time of the stop, Agent Key was assigned to the Task Force covering the 17th Judicial Circuit of Greene, Marengo, and Sumter Counties, but he argues that the Organizational Agreements creating the Task Force in 2011 and 2012 expired in 2015. Shepherd further contends that the MOU and Agent Assignment, which assigned Agent Key to be a Task Force agent in 2021, are also invalid because the Task Force had ceased to exist by that time. Thus, in Shepherd's view, Agent Key lacked legal authority to conduct the traffic stop that resulted in the search of his vehicle and the seizure of evidence, and thus the evidence and Shepherd's statements are due to be suppressed. In response, the government argues that the MOU and Agent Assignment comply with Alabama law,

but that even if they do not, Agent Key acted in good faith and his actions were objectively reasonable in making the stop, so the evidence should not be suppressed.

Shepherd's other argument is that Agent Key lacked probable cause for the traffic stop because he did not pace Shepherd's vehicle for a sufficient period of time or distance to accurately gauge Shepherd's speed. The government disagrees.

Each argument is addressed in turn.

**B.     Even assuming that the Task Force was not in compliance with the Code of Alabama, Agent Key acted in good faith, and his conduct was objectively reasonable**

> **1.     *the jurisdiction of deputy sheriffs and district attorney investigators in Alabama***

In Alabama, a county sheriff is an executive officer of the State. *See* Ala. Const. Art. V, § 112. A sheriff may appoint or employ general or special deputies to enable him to fulfill his office's duties. *Perkins v. Reed*, 14 Ala. 536, 537 (1848); *Lewis v. State*, 59 So. 2d 577, 582 (1912). Alabama law gives sheriffs and their deputies law enforcement authority over their entire county. *See* Ala. Code § 36-22-3(4). This authority is not limited or restricted inside the city limits of a municipality that is located within the sheriff's respective county. *See id*. As such, a sheriff may deputize a city police officer as a special deputy sheriff with the same or limited authority as directed to the sheriff to establish a deputy's jurisdictional authority. *See* Opinion to Honorable J. F. "Buddy" Glasgow, Shelby County Sheriff, A.G. No. 81-00369 (May

7

8, 1981); Opinion to Honorable Heath Taylor, Russell County Sheriff, A.G. No. 2021-043 (August 4, 2021).

In addition, district attorneys in Alabama may appoint "a chief investigator and, from time to time, additional investigators who will each be a peace officer . . ." Ala. Code § 12-17-220.1. These appointees must meet the minimum standards for law enforcement officers and be "APOST" certified. *Id.* District attorney investigators "serve at the pleasure of the district attorney[,]" "have the same authority as deputy sheriffs and other law enforcement officers[,]" and "shall perform duties as assigned by the district attorney." *Id.* Commander Sumlin testified that he is a District Attorney Investigator who reports to the District Attorney for the 17th Judicial Circuit and is thus able to enforce the laws as a deputy sheriff would over the three-county area covered by the District Attorney's jurisdiction— Marengo, Sumter, and Greene Counties.

Based upon these statutes and advisory opinions, the government contends that Agent Key, as a Task Force agent, is akin to a district attorney investigator, so he has the same jurisdictional authority as a deputy sheriff. *See* suppression hearing rough transcript at 73 ("I don't believe there is an opinion that says the task force officer is like the sheriff's deputy. We just have to make the connection, the DA can appoint DA investigators, DA investigators have the same authority as sheriff

deputies, and the DA has made this a task force officer like a DA investigator, therefore, he has the same authority as the sheriff's deputy."). In this Court's view, since the District Attorney's jurisdiction in this case covers three counties, once Agent Key became a district attorney investigator on June 15, 2021, Agent Key had and continues to have jurisdiction to enforce the laws of the State of Alabama over the entire Circuit—in all three counties, including Sumter where the traffic stop was made. It would seem to this Court that the analysis of whether Agent Key had jurisdiction to stop Shepherd's vehicle could end here with the conclusion that he did, but both parties focus on whether the Task Force and Agent Key's assignment to it are in compliance with Chapter 102 of Title 11 of the Code of Alabama. Thus, the Court will discuss multi-jurisdictional agreements under Alabama law.

### 2. *Multi-jurisdictional agreements under Alabama law*

Section 11-102-1 of the Code of Alabama provides the mechanism whereby one law enforcement entity may exercise jurisdiction in another entity's jurisdiction, stating in relevant part:

> [A]ny county or incorporated municipality of the State of Alabama may enter into a written contract with any one or more counties or incorporated municipalities for the joint exercise of any power or service that the state or local law authorizes each of the contracting entities to exercise individually.

Ala. Code § 11-102-1. Further, ". . . any entity which contracts to perform or exercise any service or power pursuant to this chapter shall have the full power and authority to act within the jurisdiction of all contracting entities to the extent necessary to carry out the purposes of the contract." Ala. Code § 11-102-7. Each party to the contract must adopt "ordinances, resolutions, or polices necessary to authorize the other contracting entities to carry out their contractual duties and responsibilities." *Id.* These contracts must comply with the specifications set out in Ala. Code § 11-102-2, which requires that mutual aid contracts, generally, (i) be in writing; (ii) specify the duration of the contract, not to exceed three years; (iii) specify the purpose of the contract; (iv) specify the method to be used to terminate the contract; (v) specify the method to be used to dispose of property; and (vi) specify the manner of financing.

### 3.     *whether the Task Force and Agent Key's assignment to it are in compliance with Alabama law*

The government contends that the Task Force described above was created in accordance with Chapter 102 of Title 11 governing multi-jurisdictional contracts, as were the MOU and Agent Assignment that deputized Agent Key as a Task Force agent in 2021. However, it appears that pursuant to Ala. Code § 11-102-2, the Organizational Agreements creating the Task Force expired in September 2015. *See*

Ala. Code § 11-102-2 ("The contract shall specify the duration of the contract, which shall not exceed three years."). There has been no evidence provided that the agreements have been renewed or that a new agreement has been executed since September 2015.

The government urges that the Court need not focus on whether the Task Force was still a legal entity at the time of the traffic stop in March 2022 because the MOU and Agent Assignment, through which the District Attorney specifically gave Agent Key his authority as a Task Force agent in June 2021, complies with Ala. Code § 11-102-1, *et seq.*[1] The government contends, and this Court agrees, that the MOU and Agent Assignment comply with Ala. Code § 11-102-2 because they are in writing; specify the purpose of the agreement (to create a mutual working agreement between the two agencies and to assign an officer to the Task Force from the Demopolis Police Department); specify the duration of the agreement (three years); provide for the manner of financing and a budget (the Demopolis Police Department is to

---

[1]     The Court understands Shepherd's argument that the MOU and Agent Assignment are invalid because they were entered into with an entity—the Task Force—that had by that time ceased to exist by operation of Ala. Code § 11-102-2. However, the Task Force, through Commander Sumlin, was only one party to the MOU and Agent Assignment. Agent Key's assignment was also agreed to by the District Attorney and representatives from the City of Demopolis and the Demopolis Police Department. Presumably the District Attorney was acting pursuant to his authority under Ala. Code § 12-17-220.1 to appoint Agent Key as a district attorney investigator, regardless of the Task Force's existence.

continue to provide all salary and benefits to their officer, Agent Key); specify the method for termination of the contract (any party may terminate the agreement after providing a two-week notice); and provide for a method for disposal of property ("[a]ll property currently assigned to Officer Key by the Demopolis Police Department will remain in his possession for use during this assignment").

However, although not mentioned by either party, the Court notes that the MOU and Agent Assignment *may not* comply with Ala. Code § 11-102-3, which requires each agency's governing body to approve the agreement before it can take effect, as follows:

> No contract entered into pursuant to this chapter shall take effect until the contract has been approved by the governing body of each of the contracting municipalities or counties. Approval by a county governing body shall be by adoption of a resolution and *approval by a municipal governing body shall be by adoption of an ordinance of general and permanent operation.*

Ala. Code § 11-102-3 (emphasis added). Demopolis is governed by a mayor-council form of government. *See* City of Demopolis Government, https://demopolisal.gov/government/. In a mayor-council government, the council is the legislative authority authorized to adopt ordinances. *See* Ala. Code § 11-43-43; *Scott v. Coachman*, 73 So. 3d 607, 609 (Ala. 2011). The MOU contains signatures from the City of Demopolis Mayor and the Demopolis Police Department Chief. (Doc. 27-5). A mayor cannot enter into a contract with another party without the

council's approval because the council must adopt an ordinance to approve the contract. *See* Opinion to Honorable John T. Winans, A.G. No. 2023-033 (May 19, 2023) ("The Mayor cannot enter into an agreement with the County concerning the responsibility for roads without the approval of the Council because the Council must adopt an ordinance to approve the contract."). While the government claims that "all governing heads signed" the contract, no evidence has been submitted indicating that the Demopolis city council adopted an ordinance giving the "governing heads" the authority to enter into this multi-jurisdictional contract. For this reason, the MOU and Agent Assignment *may* not comply with Alabama law.

Shepherd's argument is that if the Organizational Agreements creating the Task Force in 2011 and the MOU and Agent Assignment authorizing Agent Key to be a Task Force member in 2021 are not in compliance with Ala. Code § 11-102-1, *et seq.*, then Agent Key lacked authority to conduct the stop in March 2022 because at that time, he was not a Task Force member and was instead a Demopolis police officer. However, as discussed previously, the Court is not convinced that the District Attorney did not simply appoint Agent Key as a District Attorney Investigator pursuant to Ala. Code § 12-17-220.1, thus giving him jurisdiction over

the entire Circuit.[2] In any event, as explained below, even assuming there are infirmities with Agent Key's assignment to the Task Force, the evidence obtained during the traffic stop is nonetheless admissible because Agent Key acted in good faith and had an objectively reasonable belief he was a member of the Task Force and not solely a Demopolis police officer at the time of the stop.

### 4.   Agent Key acted in good faith and it was objectively reasonable for a Task Force agent to believe that he was authorized to conduct a traffic stop on I 20/59

"For exclusion [of evidence] to be appropriate, the deterrence benefits of suppression must outweigh its heavy costs[,]" and the result of this cost-benefit analysis "focus[es] the inquiry on the 'flagrancy of the police misconduct' at issue." *Davis v. United States*, 564 U.S. 229, 237-38 (2011) (quoting *United States v. Leon*, 468 U.S. 879, 909-11 (1984)). Rather than looking to the officer's subjective awareness, the "reasonableness" analysis must be objective. *Leon*, 468 U.S. at 922. In *Leon*, the Supreme Court held that the exclusionary rule did not apply when police acted "in objectively reasonable relance" on an invalid warrant. *Id.* In *Arizona v. Evans*, the Supreme Court held that it did not apply when police reasonably and in

---

[2]     Granted, Demopolis may still not have properly contracted with the District Attorney to allow for the use of Agent Key's services, but that appears to be a separate inquiry from the fact that under Alabama law, a District Attorney can unilaterally appoint an investigator. *See* Ala. Code § 12-17-220.1.

good faith relied on mistaken information in a court's database that an arrest warrant was outstanding. 514 U.S. 1, 15-16 (1995). Further, a police officer's reasonable mistake of law can "give rise to the reasonable suspicion necessary to uphold the seizure under the Fourth Amendment." *Heien v. North Carolina*, 574 U.S. 54, 57 (2014). In *Heien*, the police officer misunderstood state law when he pulled over a vehicle for only having one working brake light. *Id.* at 58-59. However, North Carolina law required drivers to have a vehicle "equipped with a stop lamp on the rear of the vehicle" which meant that having one working brake light was legal. *Id.* The Supreme Court held that the officer's mistake of law was objectively reasonable. *Id.*

In this case, Agent Key was instructed in June 2021 by the Demopolis Police Chief, the District Attorney, and the Task Force Commander that he was a full-time member of the Task Force for the following three years. Key was given a copy of the Task Force's Standard Operating Procedures, he received a list of his job duties, which included interstate interdiction, he completed training courses on interstate interdiction, and he received training from the Commander and other agents within the Task Force, including interstate ride-alongs. Agent Key was specifically told that he could conduct traffic stops for speeding on the interstate in his capacity as a full-time Task Force agent. Key has been a law enforcement officer for 15 years at the

Demopolis Police Department. Key explained that, prior to becoming a full-time Task Force agent, he knew that he could not conduct traffic stops on the interstate for speeding because it was outside of his jurisdiction. He testified that this changed once he became a Task Force agent. The Task Force was in operation for much of the 15 years in which Key was a police officer, and the Demopolis Police Department was one of the original members of the Task Force in 2011. Indeed, the Task Force has been operating without challenge for over a decade. Agent Key had no reason to question whether he had jurisdiction to conduct a traffic stop for speeding on the interstate on March 10, 2022. Indeed, no objectively reasonable officer in Agent Key's position would have questioned this authority in light of all the surrounding circumstances. So even if Agent Key's belief was incorrect as a mistake of law, his mistake was reasonable under the circumstances. *See Heien*, 574 U.S. at 57.

Police officers are not lawyers, and Agent Key should not be expected to resolve the legal question of whether the multi-jurisdictional law enforcement entity for which he worked was formed properly under Alabama law. *See Paez v. Mulvey*, 915 F.3d 1276, 1286 (11th Cir. 2019) (stating that police officers are not lawyers and cannot be expected to resolve legal questions or affirmative defenses). Indeed, the fact that this Court has spent numerous pages examining whether the Organizational Agreements that created the Task Force as well as the MOU and Agent Assignment

pertaining specifically to Agent Key comply with Alabama Code sections 11-102-1, 2, 3, and others without a clear answer, further underscores how unreasonable it would be to expect a police officer in Agent Key's circumstances to do the same.

In sum, Agent Key acted in good faith and in an objectively reasonable manner when making the stop in this case as a Task Force agent. Moreover, the marginal benefits that might follow from suppressing evidence obtained in these circumstances cannot justify the substantial costs of exclusion. Accordingly, the evidence will not be suppressed on this ground, but this Court strongly encourages the Task Force and all cooperating agencies to review their agreements for compliance with Alabama law.

### B. Agent Key had sufficient probable cause to believe that Shepherd was speeding, thereby violating Ala. Code § 32-5A-171(4)

The Court devotes fewer pages to Shepherd's second argument because it indicated its disagreement with this contention at the suppression hearing.

Section 32-5A-171 of the Alabama Code sets the maximum speed limits on roadways throughout the state of Alabama. An investigative stop predicated on an observed traffic violation is a seizure under the Fourth Amendment. *Rodriguez v. United States*, 135 S. Ct. 1609, 1612 (2015). To comply with the Fourth Amendment, an officer's traffic stop must be predicated on reasonable suspicion: "a particularized and objective basis for suspecting the person stopped of criminal activity." *United*

*States v. Campbell*, 26 F.4th 860, 880 (11th Cir. 2022). The Eleventh Circuit has concluded in unpublished opinions that probable cause for a traffic stop can be established when officers use their patrol vehicle's speedometer to determine a defendant's speed. *See United States v. Rowls*, 402 F. App'x 467, 468 (11th Cir. 2010); *United States v. Peguero*, 518 F. App'x 792, 795 (11th Cir. 2013). No authority has been submitted that would require a police officer to pace a vehicle for any specified amount of time before making it reasonable to rely on the officer's own speedometer as a basis for gauging that vehicle's speed.

On March 10, 2022, Agent Key had a good faith, reasonable suspicion that Shepherd was violating the law by speeding. Agent Key had extensive experience in pacing vehicle speeds, and he noted that Shepherd was at least driving 77 m.p.h. and observed Shepherd's vehicle passing other vehicles. The evidence stemming from the traffic stop is thus not due to be suppressed on this ground.

## IV.   CONCLUSION

For the aforementioned reasons, Shepherd's motion to suppress (doc. 23) is hereby **DENIED**. The evidence and statements will not be suppressed.

**DONE** and **ORDERED** on October 10, 2023.

_____
L. Scott Coogler
United States District Judge

160704